UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELISA FONTANELLI, as Next Friend of JUAN
MARTIN BERNAL GARCIA,

                Petitioner,

              -against-

LADEON FRANCIS, New York Field Office
Director for U.S. Immigration and Customs
Enforcement; PAUL ARTETA, Director of the
Orange County Correctional Facility; ANNA C.
LITTLE, Acting Chief Immigration Judge, Executive
Office of Immigration Review; SIRCE E. OWEN,
Acting Director, Executive Office of Immigration
Review; PAMELA BONDI, Attorney General of the
United States; KRISTI NOEM, Secretary of
Homeland Security, and TODD M. LYONS; Acting
Director, U.S. Immigration and Customs
Enforcement,

              Respondents.

Case No. 1:25-cv-07715 (JLR)

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

    Juan Martin Bernal Garcia ("Bernal Garcia") has petitioned this Court for a writ of

habeas corpus, pursuant to 28 U.S.C. § 2241, challenging his detention by Immigration and

Customs Enforcement ("ICE") and seeking either his immediate release or, in the alternative,

a bond hearing within five days of the Court's order at which ICE bears the burden of

justifying his continued detention (the "Petition").

    On September 17, 2025, the Court issued an Order to Show Cause ("OTSC") why the

Petition should not be granted and directed Respondents to file a return on the OTSC no later

than September 22, 2025.  *See* Dkt. 3.  On September 25, 2025, the Government filed a

"Return to Habeas Petition," Dkt. 21 ("Return"), which included accompanying exhibits, *see*

Dkts. 21-1 to 21-10, a Declaration of Supervisory Detention and Deportation Officer

("SDDO") Kareem Johnson, Dkt. 22 ("Johnson Decl."), and a memorandum of law in

opposition to the Petition, Dkt. 23 ("Opp.").  On September 26, 2025, Bernal Garcia filed a

reply, Dkt. 24 ("Reply"), along with a Supplemental Declaration of Lauren Kostes in Support

of Petitioner's Reply Brief, Dkt. 24-1 ("Kostes Decl."), and accompanying exhibits, *see* Dkts.

24-2 to 24-3.  On September 27, 2025, Bernal Garcia filed a Motion to Enforce the Court's

Order and Compel Return, or in the Alternative, Motion to Release Under *Mapp v. Reno*.

Dkt. 26.

On September 29, 2025, the Court heard oral argument from *pro bono* counsel for

Bernal Garcia and from the Government.  The Court is grateful to New York Legal Assistance

Group for agreeing to represent Petitioner *pro bono* under the difficult circumstances

described below.  The Petition having been fully briefed and argued, the Court now renders its

decision and DENIES the petition without prejudice.

## BACKGROUND

Bernal Garcia, a citizen of Colombia, entered the United States legally on October 3,

2022, on a B-2 visa.  Johnson Decl. ¶ 4.  Though that visa expired on April 2, 2023, Bernal

Garcia remained in the United States.  *Id.*; *see* Reply at 2; Opp. at 5.

On September 15, 2025, Bernal Garcia was arrested by plainclothes officers of the

Amtrak Police Department ("APD") in the men's bathroom of New York Penn Station's main

concourse, and he was charged with public lewdness and exposure of a person.  Dkt. 21-5 at

3; *see id.* at 1; N.Y. Penal Law §§ 245.00, 245.01.  After issuing Bernal Garcia a summons to

appear in state court at a later date in connection with those charges, *see* Dkt. 21-6, APD

contacted ICE Enforcement and Removal Operations ("ERO"), completed his "criminal arrest

processing," and then turned him over to ICE at 26 Federal Plaza, New York, New York,

Johnson Decl. ¶ 5; *see* Dkt. 21-5 at 4.  After receiving Bernal Garcia, ICE "prepared and

served [him] with a Form I-200, Warrant of Arrest of Alien."  Johnson Decl. ¶ 6; *see* Dkt. 21-

2.  The Government also represents that ICE personally served a Notice to Appear ("NTA") on Bernal Garcia, which alleged that he had remained in the United States beyond the expiration of his visa without authorization, and that he was subject to removal from the United States under section 237(a)(1)(B) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(1)(B). *See* Opp. at 3; Dkt. 21-3 at 1; Johnson Decl. ¶ 6.  The first page of the NTA orders Bernal Garcia to appear before an immigration judge in New York City on September 24, 2025, at 8:30 PM, and it is signed by ICE SDDO Christopher Schultz.  *Id.*  The bottom of the second page of the NTA contains a Certificate of Service, on which ICE — through an officer identified as Deportation Officer Raina — stated that it had served the NTA on Bernal Garcia "in person," and that it had "provided oral notice in the English language" to Bernal Garcia "of the time and place of his . . . hearing and of the consequences of failure to appear."  Dkt. 21-3 at 2.  The NTA also contains a section entitled "Request for Prompt Hearing" that states, "To expedite a determination in my case, I request this Notice to Appear by filed with the Executive Office for Immigration Review as soon as possible. I waive my right to a 10-day period prior to appearing before an immigration judge and request my hearing be scheduled."  *Id.*  This section is not signed or dated by ICE or by Bernal Garcia. *Id.*

According to the declaration of SDDO Kareem Johnson, ICE made an individualized determination on September 15, 2025, that Bernal Garcia "would be detained pending removal proceedings . . . because (i) he has not established he does not present a danger to the public, due to his criminal conduct for which he was arrested and charged earlier that same day; and (ii) he has not established that he is not a flight risk."  Johnson Decl. ¶ 6.  The Government has submitted a copy of ICE's Notice of Custody Determination ("NCD"), which is a one-page form containing various statements that are to be checked off in accordance with

the custody determination made.  Dkt. 21-4.  Bernal Garcia's NCD states: "Pursuant to the authority contained in section 236 of the Immigration and Nationality Act and part 236 of title 8, Code of Federal Regulations, I have determined that, pending a final administrative determination in your case, you will be . . . [d]etained by the Department of Homeland Security."  *Id.*  The NCD states that this determination was made at 9:26 p.m. on September 15, 2025, by SDDO Schultz.  *Id.*  The bottom of the document affirms that "[t]he contents of this notice were read to Bernal Garcia, Juan Martin in the English language," and is signed by Deportation Officer Raina.  *Id.* (capitalization omitted).

The NCD also includes a line informing Bernal Garcia that he "may request a review of this custody determination by an immigration judge."  *Id.*  Underneath that line, there are X marks in the boxes next to the following two sentences: "I acknowledge receipt of this notification" and "I **do** request an immigration judge review of this custody determination."  *Id.*  Although there is a line designated for Bernal Garcia's signature on the NCD, the NCD does not contain his signature.  *Id.*

In addition, the Government has submitted a Form I-213, the Record of Deportable/Inadmissible Alien that ICE made for Bernal Garcia upon his intake.  Dkt. 21-1 ("I-213"); *see* Return ¶ 1.  Among other things, the I-213 reports that Bernal Garcia was asked "a series of pedigree questions," "advised . . . of his right to communicate with a consular officer from [Colombia]," "afforded . . . the opportunity to make a telephone call," asked whether he required medical attention, offered food and water at 8:45 p.m., asked about his veteran and marital status, asked whether he had any gang or terrorist-organization affiliations, and asked whether he feared returning to Colombia.  I-213 at 3.  The first page of the I-213 lists SDDO Schultz as the "Examining Officer" and bears his signature, and each page of the report is signed by Deportation Officer Raina.  The last page of the I-213 states,

4

under the heading "Disposition," that Bernal Garcia was "served . . . with an I-200, Warrant for Arrest, FD-249, I-826, Notice of Rights/Request for Disposition, [and] I-862, Notice to Appear," and that Bernal Garcia "will be detained in ICE custody pending proceedings before an Immigration Judge." *Id.* at 4.

At 4:22 p.m. on September 16, 2025, while still in ICE custody in New York City, Bernal Garcia — through his next friend, Elisa Fontanelli — filed the Petition in this Court, seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Dkt. 1; *see* Dkt. 10 at 1. At that time, he had not requested a redetermination of his individualized detention, and the papers submitted suggest that he still has not made that request. *See* Kostes Decl. ¶ 36 (averring Bernal Garcia "did not know he was eligible to request such a hearing and had no knowledge of how to do so"); Reply at 11 (arguing Bernal Garcia "could not have asked for a custody redetermination hearing as he was never informed of this possibility"); Opp. at 14 (arguing Bernal Garcia "is eligible for a bond hearing and has not requested one"). During the hearing before this Court on Monday, September 29, 2025, neither party could confirm whether Bernal Garcia had independently requested a bond hearing over the weekend, but counsel for Bernal Garcia confirmed that it was not yet authorized to do so on his behalf.

On September 17, 2025, the Court issued the OTSC and, as part of that order, restrained the Government from transferring Bernal Garcia out of the Southern District of New York. Dkt. 3. On September 21, 2025, however, the Government informed the Court that its restraining order was too late: ICE had already transferred Bernal Garcia, at 6:11 p.m. on September 16, 2025, from 26 Federal Plaza to Delaney Hall Detention Facility in Newark, New Jersey. Dkt. 10 at 1. ICE then transferred Bernal Garcia once more on September 20, 2025 — due to, the Government explained, "bed space restrictions" at Delaney Hall — this time to Port Isabel Service Processing Center in Los Fresnos, Texas. *Id.* at 2. In its letter

dated September 21, 2025, the Government further informed the Court that it "anticipate[d] that" Bernal Garcia would be transferred once again "in the next day or two" to Florence Service Processing Center in Florence, Arizona.  *Id*.

Over the course of those several days, Bernal Garcia's next friend Ms. Fontanelli, and legal counsel she had identified who sought to represent Bernal Garcia *pro bono*, were trying with little success to locate and speak with Bernal Garcia.  *See* Dkts. 13, 15.  Upon learning on September 17, 2025, that Bernal Garcia had been transferred from New York City to Delaney Hall, counsel "scheduled the first available confidential legal call" with Bernal Garcia at that facility, "which would not be until five days later, on September 22, 2025." Kostes Decl. ¶ 21.  That call was cancelled when Bernal Garcia was transferred to Port Isabel Processing Center on September 19, 2025.  *Id.* ¶ 22.  Counsel scheduled a new legal call with Bernal Garcia at Port Isabel for September 22, 2025.  *Id.*  But before that call could take place, ICE again transferred Bernal Garcia, this time to Florence Service Processing Center in Florence, Arizona; fifteen minutes before the call's scheduled time, ICE informed counsel that the call was cancelled.  *Id.* ¶¶ 25-26.  After trying to arrange a legal call with Bernal Garcia through an ICE official at that facility, counsel instead had a "non-confidential" telephone call with him on September 23, 2025 — their "first contact" with him — and he agreed to retain their services.  *Id.* ¶¶ 27-28.  Although an ICE official at Florence told counsel they "would have a longer, confidential legal call" with Bernal Garcia within the next two days, Bernal Garcia was instead transferred once more that same evening, to Eloy Detention Center in Eloy, Arizona, and the anticipated call was cancelled.  *Id.* ¶¶ 29-30.  On September 24, 2025, counsel had their first confidential legal call with Bernal Garcia.  *Id.* ¶ 33.  It was thirty minutes long.  *Id.*

On September 23, 2025, having received conflicting information from the Government and Fontanelli about Bernal Garcia's location and deportation status, the Court ordered that Bernal Garcia "not be removed from the United States until the Court adjudicates the present petition." Dkt. 14. On September 24, 2025, having received a letter from counsel describing their difficulty in reaching and conferring with Bernal Garcia, the Court ordered that the Government inform the Court of Bernal Garcia's location by 5:00 p.m. that evening. Dkt. 16 at 1. That evening, the Government informed the Court that Bernal Garcia had been transferred to Eloy. Dkt. 19 at 1. Despite these transfers, the Government represents that ICE still attempted to initiate Bernal Garcia's removal proceedings in New York by filing his Notice to Appear, dated September 15, 2025, with the Varick Street Immigration Court in New York. Opp. at 5 n.4; *see* Dkt. 21-3. On September 21, 2025, while Bernal Garcia was in Texas, that filing was rejected "for procedural reasons." Opp. at 5 n.4. ICE refiled it with the Immigration Court in Florence, Arizona, on September 23, 2025, "which accepted [it], thereby commencing removal proceedings against" Bernal Garcia. Johnson Decl. ¶ 11. Bernal Garcia's initial master calendar hearing was scheduled for September 26, 2025, at 8:30 a.m. *Id.*; Kostes Decl. ¶ 35; Dkt. 21-10. However, after his subsequent transfer from Florence to Eloy, that hearing was "vacated and venue changed to the Eloy Immigration Court, as [Bernal Garcia] is now detained in that court's jurisdiction." Kostes Decl. ¶ 37.

Bernal Garcia reports that during his detention he has not received enough to eat, has been made to wait on a cold bus for long periods of time, and has witnessed violent interactions between other detainees. Kostes Decl. ¶ 40. He states further that he was not allowed to shower or change his clothes for several days at a time. *Id.* ¶ 41. He also reports that he was placed in protective custody after notifying detention staff that sexualized, harassing comments he received had led him to fear for his safety. *Id.* ¶ 43; *see* Reply at 11.

Bernal Garcia "has begun to experience panic attacks" due to these conditions.  Kostes Decl. ¶ 42.  As described above, his detention has also made it difficult for him to communicate with his attorneys, who, at the time they submitted their brief to this Court on his behalf, had succeeded in having just one thirty-minute confidential phone call with Bernal Garcia since his initial detention, despite their diligent efforts.  *Id.* ¶¶ 33-34.  Despite these difficulties in meeting with counsel, Bernal Garcia did not request an adjournment of this Court's hearing on his habeas petition.

## LEGAL STANDARD

Any person "in custody in violation of the Constitution or laws or treaties of the United States" may seek, and be granted, a writ of habeas corpus in a district court.  28 U.S.C. § 2241(c)(3).  That right extends to noncitizens who "challeng[e] the constitutionality of their detention" pending removal proceedings.  *J.C.G. v. Genalo*, No. 24-cv-08755 (JLR), 2025 WL 88831, at *3 (S.D.N.Y. Jan. 14, 2025) (quoting *Reid v. Decker*, No. 19-cv-08393 (KPF), 2020 WL 996604, at *5 (S.D.N.Y. Mar. 2, 2020).  Thus, noncitizens are entitled to habeas review of not just "the legality of their ongoing detention," but also "the lawfulness of [that] detention when it is first imposed."  *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020)).  However, that review "'is not a neutral proceeding in which the petitioner and the [Government] stand on an equal footing.  Rather, it is an asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment,'" and "it is the petitioner who bears the burden of proving that he is being held contrary to law . . . by a preponderance of the evidence."  *Skaftourous v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) (quoting *Pinkney v. Keane*, 920 F.2d 1090, 1094 (2d Cir. 1990)); *accord Zhu v. Genalo*, No. 25-cv-06523 (JLR), 2025 WL 2452352, at *2 (S.D.N.Y. Aug. 26, 2025).  Moreover, Courts typically require, "as a prudential matter," that noncitizens seeking such review first exhaust all

available administrative remedies. *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018).

It is uncontested that Bernal Garcia is subject to discretionary detention pursuant to 8 U.S.C. § 1226, which authorizes the Government to "arrest[] and detain[]" noncitizens "pending a decision on whether [they are] to be removed from the United States," 8 U.S.C. § 1226(a), as opposed to mandatory detention pursuant to 8 U.S.C. § 1225. The Government's broad discretion under § 1226(a) has a limitation: "before the Government may exercise such discretion to detain a person, '§ 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination,'" specifically "whether the noncitizen is a 'danger to property or persons' and is 'likely to appear for any future proceeding.'" *Lopez Benitez v. Francis*, --- F. 3d --- , 2025 WL 2371588, at *10 (S.D.N.Y. Aug. 13, 2025) (first quoting *Velaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020), *appeal withdrawn sub nom. Velesaca v. Wolf*, No. 20-2153, 2020 WL 7973940 (2d Cir. Oct. 13, 2020); and then quoting 8 C.F.R. § 1236.1(c)(8)). A district court has no authority to review ICE's discretionary determinations made under this subsection or otherwise question their propriety. *See* 8 U.S.C. § 1226(e) ("[ICE]'s discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the [ICE] under this section regarding the detention of any [noncitizen] or the revocation or denial of bond or parole."); *see Lopez Benitez*, 2025 WL 2371588, at *11 (expressly not reaching whether Government's "proffered basis in its decision to detain [petitioner] is substantively inadequate in some respect," and noting the Government "has wide latitude with respect to its discretion in this regard that is not subject to second-guessing by this Court."). Habeas review does remain available for "questions of law or constitutional challenges to the application of § 1226," *Reyes v. King*, No. 19-cv-08674, 2021 WL 3727614,

at *5 (S.D.N.Y. Aug. 20, 2021) (citation omitted), and for "challenges 'to the extent of the Government's detention authority under the statutory framework as a whole,'" *J.C.G.*, 2025 WL 88831, at *3 (citation omitted). *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent."); *Velasco Lopez*, 978 F.3d at 850 (quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (2d Cir. 2020)) (habeas petitioners may still bring "[c]laim[] that the discretionary process itself was constitutionally flawed"). And "executive detention orders" like those made by ICE, "which occur without the procedural protections required in courts of law, call for the most searching review" by district courts. *Id.*

Bernal Garcia, as a petitioner challenging both the procedural and substantive adequacy of that process, must establish by a preponderance of the evidence — that is, must establish that it "is more likely than not true," *United States v. Goodrich*, 12 F.4th 219, 232 (2d Cir. 2021) — that his detention is unlawful because of these alleged inadequacies. *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997) ("To establish a fact by a preponderance of the evidence means to prove that the fact is more likely true than not true." (quoting 4 Leonard Sand *et al.*, *Modern Federal Jury Instructions* ¶ 73.01, at 73-74 (1997))).

## DISCUSSION

### I. Jurisdiction

The parties do not contest — and indeed the Government expressly concedes — that the Court may consider the Petition notwithstanding Bernal Garcia's transfer out of the Southern District of New York. *See* Opp. at 4 n.3 ("[H]abeas jurisdiction properly vested in this Court, and Petitioner's subsequent transfer out of the district does not deprive this Court of jurisdiction."). Even so, the Court is mindful of its "independent and ongoing duty to

assure itself that it has jurisdiction to render a decision," *Hernandez v. Khahaifa*, No. 10-cv-06582 (KMK), 2013 WL 3984958, at *1 (S.D.N.Y. July 31, 2013), and finds that it does have jurisdiction. Bernal Garcia filed the Petition with this Court while he was detained by ICE in the Southern District of New York, and he named the director of ICE's New York Field Office, among others, as respondent. *See generally* Petition. In other words, Bernal Garcia "name[d] his warden as respondent and file[d] the [P]etition in the district of confinement," which gives this Court jurisdiction to consider it. *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). Bernal Garcia's subsequent transfer out of the Southern District of New York does not alter that analysis. Rather, habeas "[j]urisdiction is evaluated at the time the petition is filed," and as a result that jurisdiction "is not impacted by subsequent transfers of the Petitioner, even transfers outside the judicial district in which the petition was properly filed." *Golding v. Sessions*, No. 18-cv-03036 (RJS), 2018 WL 6444400, at *2 (S.D.N.Y. Dec. 6, 2018); *see Khalil v. Joyce*, 771 F. Supp. 3d 268, 289 (S.D.N.Y. 2025) ("[A] prisoner's transfer after a petition is filed does not deprive a court that would otherwise have jurisdiction of the ability to adjudicate his petition."). Therefore, regardless of Bernal Garcia's present physical location, the Court has jurisdiction over his Petition.

## II.    Exhaustion

The Government urges the Court to deny the Petition as premature. Opp. at 6. The Government argues that Bernal Garcia was "provided with robust process" during his removal proceedings, "including an initial custody determination by ICE and the right to seek a custody redetermination before an immigration judge, which he has not yet sought." *Id*. Indeed, the Government contends that Bernal Garcia "is eligible for a bond hearing and has not requested one." Opp. at 14. For his part, Bernal Garcia contends that he is under no

statutory obligation to exhaust these administrative remedies before seeking habeas relief and that, even if he were, that requirement should be excused.  Reply at 10-12.

As a threshold matter, it is unclear whether Bernal Garcia has requested review of his custody determination by an immigration judge. The Government represents that he has not, and Bernal Garcia's counsel's papers suggest that he did not request a redetermination because he did not know how to do so.  *See* Kostes Decl. ¶ 36 (averring Bernal Garcia "did not know he was eligible to request such a hearing and had no knowledge of how to do so"); Reply at 11 (arguing Bernal Garcia "could not have asked for a custody redetermination hearing as he was never informed of this possibility"); Opp. at 14 (arguing Bernal Garcia "is eligible for a bond hearing and has not requested one").  While Bernal Garcia's NCD, albeit unsigned by Bernal Garcia, contains a checked off box that states, "I **do** request an immigration judge review of this custody determination," *see* Dkt. 21-4, the Government represented at oral argument that an additional request for a bond hearing is necessary. Counsel for Bernal Garcia similarly acknowledged that it was not requesting an immediate bond hearing (despite the request in their reply papers), because Bernal Garcia may wish to have additional time to gather documents and information to present to an immigration judge at the hearing, and counsel had not had the opportunity to discuss this with their client.

In any event, the additional administrative remedy of a redetermination assessment by an immigration judge is required here before Bernal Garcia may seek this Court's intervention.  The doctrine of exhaustion of administrative remedies prevents a party from "seek[ing] judicial review of an adverse administrative determination" without first seeking "all possible relief within the agency itself."  *Beharry v. Ashcroft*, 329 F.3d 51, 56 (2d Cir. 2003) (Sotomayor, J.) (quoting *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995)).  There is no "statutory exhaustion requirement" in 28 U.S.C. § 2241, as the Government notes, but habeas

petitioners nevertheless "must normally exhaust administrative remedies before seeking federal court intervention."  Opp. at 13 (quoting *Michalski v. Decker*, 279 F. Supp. 3d 487, 495 (S.D.N.Y. 2018)).  That requirement is driven by the prudential exercise of district courts' discretion "to 'protect the authority of administrative agencies, limit interference in agency affairs, permit the agencies to develop the factual record to make judicial review more efficient, and to resolve issues to render judicial review unnecessary.'"  *J.C.G. v. Genalo*, No. 24-cv-08755 (JLR), 2025 WL 88831, at *4 (S.D.N.Y. Jan. 14, 2025) (alterations adopted) (quoting *Garcia v. Decker*, 448 F. Supp. 3d 297, 305 (S.D.N.Y. 2020)).  The requirement also "aims to provide the agency with a chance to correct its own errors."  *Guzman v. Joyce*, --- F. Supp. 3d ---, 2025 WL 1696891, at *2 (S.D.N.Y. June 17, 2025).  Here, an immigration judge has not had the chance to evaluate ICE's detention determination for any such errors.

To be sure, there are "a number of exceptions" to the application of discretionary exhaustion requirements, including when "(1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question."  *Beharry*, 329 F.3d at 62 (quoting *Able v. United States*, 88 F.3d 1280, 1288 (2d Cir. 1996)).  Bernal Garcia argues that he qualifies for these exceptions, but the Court does not agree.

Bernal Garcia first argues that exhausting administrative remedies would provide no genuine opportunity for relief and would be futile.  Citing *Kelly v. Almodovar*, No. 25-cv-06448 (AT), 2025 WL 2381591 (S.D.N.Y. Aug. 15, 2025), he grounds this argument in his assertion that ICE made "no individualized initial determination in detaining" him in the first instance and, therefore, an immigration judge "cannot genuinely conduct redetermination."  Reply at 11 (emphasis omitted).  But *Kelly* is not an appropriate comparison to Bernal

13

Garcia's situation. There, the petitioner had previously been detained by ICE but was released on his own recognizance during the pendency of his removal proceedings. *Kelly*, 2025 WL 2381591, at *1. Months later, ICE redetained the petitioner after one of his scheduled check-ins. *Id.* at *2. He contended that this redetention was part of a "recent nationwide policy" by the Department of Homeland Security to redetain noncitizens appearing for immigration court proceedings and ICE check-ins, and "that, pursuant to that policy, he received no notice or an opportunity to be heard as to whether his detention was warranted." *Id.* Crucially, the Government did not "deny the existence of the new detention policy described in the [p]etition and supporting submissions, [or] . . . argue that [petitioner] pose[d] a risk of flight or a danger to the community," *id.* at *3. Thus, the petitioner was concededly detained based on a policy of indiscriminately redetaining noncitizens appearing for immigration court proceedings. *See also Chipantiza-Sisalema v. Francis*, No. 25-cv-05528 (AT), 2025 WL 1927931, at *3 (S.D.N.Y. July 13, 2025) (cited by Bernal Garcia in Reply at 11, noting that it was "undisputed[] [that] ICE summarily detained Chipantiza-Sisalema pursuant to an agency policy of arbitrary detention without affording her notice or opportunity to be heard").

That is not this case, where the Government has presented evidence that Bernal Garcia did receive an individualized determination, submitted a sworn affidavit to that effect, *see* Johnson Decl. ¶ 6, and submitted documentation indicating that Bernal Garcia received notice of that determination. Dkt. 21-4 (statement at bottom of NCD that "[t]he contents of this notice were read to Bernal Garcia, Juan Martin in the English language," signed by an ICE officer (capitalization omitted)). Bernal Garcia's counsel argues that the lack of his signature on the NCD "suggest[s] that no ICE official explained to him the grounds for his detention or his ability to challenge his detention." Reply at 3; *see also id.* at 6-7. However, the NCD

expressly states that it was read to Bernal Garcia in English, and the box requesting review of the custody determination is checked off. Dkt. 241-4. Accordingly, Bernal Garcia has not shown that ICE "fail[ed] to follow its own policies," Reply at 11.

To the extent that Bernal Garcia challenges the substance of that individualized determination, the discussions that took place between him and ICE officials, or whether robust consideration was given by ICE, *see* Reply at 9-10, section 1226(e) prevents the Court from "second-guessing" ICE's individualized custody determination. *See Lopez Benitez*, 2025 WL 2371588, at *11 (ICE "has wide latitude with respect to its discretion in this regard that is not subject to second-guessing by this Court" pursuant to section 1226(e)). The Court does not, because it cannot, reach Bernal Garcia's argument that "a single charge alone — without any conviction — does not justify detention" by ICE, and the case he cites to support that contention does not alter the Court's analysis. *See* Reply at 9 (citing *Villiers v. Decker*, 31 F.4th 825 (2d Cir. 2022)). In *Villiers*, the district court had previously issued a preliminary injunction ordering the petitioner's release from ICE custody due to COVID concerns and enjoined ICE from re-detaining him. *Villiers*, 31 F.4th at 828. That order required, however, that the petitioner "not commit a federal, state, or local crime" while released. *Id.* at 829 (citation omitted). The petitioner was subsequently arrested by police after an alleged domestic violence incident, and ICE sought to redetain him on that basis, arguing that his arrest had violated the terms of the district court's order. *Id.* at 829-30. That case, therefore, analyzes whether the petitioner's arrest violated the court's order. That analysis is distinct from the issue, raised here, of whether ICE followed its procedures and complied with due process in making its individualized custody determination. Not only did the Second Circuit reject the district court's determination that "as a matter of law a conviction was a necessary prerequisite for" detention, *id.* at 836, but more importantly the court noted that the

circumstances of that case differed from cases where, as here, the petitioner's "detention or release on bond . . . [is] controlled by the United States Attorney General, whose exercise of discretion . . . [is] not . . . judicially reviewable," *id.* at 831-32.

*Joseph v. Decker*, No. 18-cv-02640 (RA), 2018 WL 6075067 (S.D.N.Y. Nov. 21, 2018), cited by Bernal Garcia, is also inapposite.  In that case, petitioner challenged the constitutionality of the burden allocation during his bond hearing, where the immigration judge had found that petitioner failed to demonstrate that he was not a danger to the community or a flight risk, and sought either immediate release or a supplemental bond hearing in which the burden was shifted to the Government.  *Id.* at *3-4.  The district court held that he need not exhaust further administrative remedies, because the Board of Immigration Appeals (the next level of his administrative review process) would not provide either form of relief to him "based on its own precedent."  *Id.* at *5.  Here, by contrast, an immigration court can readily provide Bernal Garcia with the relief he seeks: redetermination at a bond hearing and, perhaps, release, which seems likely since the criminal charges have now been dropped and Bernal Garcia contends that he has "significant ties in the community and contributed greatly to the arts in New York City."  Reply at 8; *see Castillo Lachapel v. Joyce*, No. 25-cv-04693 (JHR), 2025 WL 1685576, at *3 (S.D.N.Y. June 16, 2025) ("Because [petitioner]'s [potential] bond hearing may provide him with the relief that he seeks — *i.e.*, his release — the [c]ourt concludes in the exercise of its discretion that [petitioner] must exhaust these avenues before seeking judicial relief." (second alteration in original) (quoting *Michalski*, 279 F. Supp. 3d at 496)).  And the question of whether an eventual bond hearing complies with due process is not yet before this Court.  *See Guzman*, 2025 WL 1696891, at *2 (rejecting the argument that a future bond hearing may apply an unconstitutional burden

shifting standard as premature given that petitioner had neither sought nor been provided with such a hearing yet).

Bernal Garcia also cites *Rodriguez-Figueroa v. Barr*, 442 F. Supp. 3d 549 (W.D.N.Y. 2020), in support of his futility argument, but it is similarly unhelpful to him. There, the petitioner was held in custody pursuant to section 1225(b), and "[t]he only statutory mechanism for release" from that type of custody is parole, granted in the discretion of the Secretary of the Department of Homeland Security. *Id.* at 560. The court held that it would be futile to require the petitioner to request parole before seeking habeas relief, because the petitioner had "already had a bond hearing where a neutral decision-maker found he was not eligible to be released on bond." *Id*. The court reasoned that if the petitioner had not succeeded at the bond hearing, "then he would almost certainly not be released under the more discretionary statutory parole standard." *Id*. Bernal Garcia's situation here is the opposite. He was denied release under ICE's more discretionary standard, and now he may avail himself of his right to a bond hearing before an immigration judge.

Bernal Garcia also has not sufficiently demonstrated a risk of irreparable injury. It is true, as he argues, that unlawful detention itself can be a form of irreparable injury in certain circumstances. *See* Reply at 11. But, as explained above, Bernal Garcia has not shown that his detention is presently unlawful given the Government's representations and evidence that ICE did make an individualized determination to detain him.

Moreover, given the relatively short duration of Bernal Garcia's detention thus far, the Court does not have sufficient basis to conclude that Bernal Garcia's detention is unlawful due to its length. *Cf. J.C.G.*, 2025 WL 88831, at *9 (not requiring exhaustion, though not addressing irreparable harm argument, where petitioner had been detained for nine months, and noting that "detention pending removal should be of a 'relatively short duration'"

(quoting *Velasco Lopez*, 978 F.3d at 852)).  While the Court is not pleased by the continued

transfers of Bernal Garcia, which have frustrated the ability of counsel to reach him, and the

alleged difficult conditions to which he has been subjected while detained, a prompt bond

hearing before an immigration judge is the appropriate remedy in the first instance.  The Court

will not order that the bond hearing take place within five days, as requested by Bernal Garcia

in his papers, because Bernal Garcia's counsel has represented that he may need time to gather

sufficient documentation to present the strongest argument on his behalf at that bond hearing.

However, this matter may be revisited should Bernal Garcia's detention become prolonged.

*Guzman* 2025 WL 1696891, at *3 (holding that the risk of "'prolonged detention' — as

opposed to actual prolonged detention — 'does not constitute an irreparable injury that

excuses the prudential exhaustion requirement'" (quoting *Roman v. Decker*, No. 20-cv-03752

(JGK), 2020 WL 4273823, at *8 (S.D.N.Y. July 24, 2020))).

       Finally, to the extent Bernal Garcia argues that the Petition raises questions that cannot

be addressed in an administrative proceeding, Reply at 11, the Court disagrees.  As explained,

an administrative proceeding beginning with a bond hearing is the appropriate avenue for

Bernal Garcia to challenge the substance of ICE's individualized determination, which is

outside the Court's jurisdiction.  *Lopez Benitez*, cited by Bernal Garcia, does not require

otherwise.  *See* Reply at 11-12.  There, as in *Kelly*, ICE concededly had not made any

individualized determination at all.  *See Lopez Benitez*, 2025 WL 2371588, at *11 (explaining

that petitioner "assert[ed] that no individualized determination as to factors such as his flight

risk or dangerousness occurred before ICE arrested him," and that "[r]espondents

acknowledge[d] that there [was] no evidence suggesting that any kind of individualized

determination was ever made as to" petitioner).  Bernal Garcia's claims about procedural

irregularities, such as the lack of a signature on the NCD and the delay in filing the NTA, may

also be addressed at the agency level through a bond hearing.  *See Joseph*, 2018 WL 6075067, at *6 (agency can remedy "procedural irregularit[ies] . . . on its own"); *Castillo Lachapel*, 2025 WL 1685576, at *3 (petitioner's "[potential] bond hearing may provide him with the relief that he seeks — *i.e.*, his release").

Given the availability of adequate administrative remedies to address Bernal Garcia's detention status, he must exhaust those remedies before seeking habeas relief.  The Court further finds that Bernal Garcia has not made a sufficient showing that he qualifies for the exceptions to exhaustion.

## CONCLUSION

For the reasons explained above, the Petition is DENIED without prejudice for failure to exhaust administrative remedies.  In light of this decision, Bernal Garcia's motion to be transferred back to the Southern District of New York, or released on bail pending determination of his habeas petition, is DENIED as moot.  The Clerk of Court is respectfully directed to close the motion at Dkt. 26.

Dated:  September 29, 2025
       New York, New York

SO ORDERED.

*Jennifer Rochon*

JENNIFER L. ROCHON
United States District Judge